

**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center



# Formal

complaint of discrimination

*Note: Complete this form, sign it, and send it in accordance with instructions from your EEO Counselor to Director, Civil Rights Center. See back for additional information or for help in completing this form.*

**1a. Name** Richard O. GAYTAN

**2. Job title and grade** EEO SPECIALIST GS9 Step 10

**3a. Home address** 1506 Pritchett Drive Newark, CA 95368

**3b. Office address** Oakland District Office 1301 Clay Street, Ste 1080N Oakland, CA 95360

**4. Telephone, including area code, extension**
home (209) 862-3755
office (510) 637-2946

**5. Bases of your complaint (Check as appropriate and specify where a blank is provided):**

☒ race Hispanic

☐ religion

☐ sex

☐ color

☐ age

☐ sexual orientation*

☒ national origin Mexican-American ☒ disability Failed to Accommodate - Veteran 30% service Disability

☒ reprisal Prior EEO Activity (CRC Case # 03-09-129) Hostile Environment on going & Failed to
*Please specify the prior EEO activity in which you were involved and the date.*
Promote based on EEO Involvements

*Protected by Executive Order 13087, not by federal statute. Claimants on this basis may request a final decision, but have no hearing or appeal rights.*

**6. Specify the action(s) that gave rise to this complaint. (Please use the back of this page if needed, and check here ☐ if continued on back.)**

*Date(s)          Specific action(s)*

Dec. 3, 2003 Failed to Promote due to Prior EEO Activity in which I named
Woody Gilliam Regional Director and Georgia Martin in my Affidavits dated
7/11/02 and August 28, 2002. See Affidavits Attached. Also Affidavit by me
in 9-2003 Failed to Accommodate - I sent two E-mail to our Deputy District
ctor William Smitherman Requesting a update on my Request for Accommodation
He directed by Email to Georgia Martin (my supervisor) and Alice Young, Acting Dist. Director

**7. Please specify remedy(ies) you believe will resolve your complaint** To meet with me on Nov. 12, 2003 - As of this
To Be Promoted to GS-11 with back | date Jan. 22, 2004 and Dec. 18, 2003 has not
pay as of Dec 3, 2002 | taken place. E-mail attached.

) To Be Accommodate with Transfer to Module 1 from my present Module 2

**8. Date notice of right to file was issued** 1-9-04

**9. Counselor's name** Vic Sura

**10. Counselor's telephone** (415) 975-4058

**11. Have you filed a complaint on this same matter with:** On Going Grievance

☐ Administrative grievance system?
☒ A union (specify AFGE Local 2391 )?
☐ Merit Systems Protection Board (MSPB)?

**If yes, date(s) of other filing(s)**

**12a. Representative's name** Lezly D. Crowell

**2b. Representative's address**

**12c. Representative's telephone** (510) 562-6975

**Date** 1-23-2004

**Signature**

*C use only    Date received by CRC staff*

*Issue*

*F#*

# Formal

complaint of discrimination

CRC-4, revised 11/99

| When can you file a formal complaint? | When your EEO counselor notifies you that your informal complaint cannot be resolved and provides you notice of your right to file a formal complaint, you have 15 calendar days from receiving that notice to complete, sign, and submit this form to the Director, Civil Rights Center (CRC) or to the Secretary of Labor. Please note that the Secretary's office will forward the complaint to CRC, which may delay processing of your complaint. |
|---|---|
| What happens next? | Only allegations that have been presented for EEO counseling will be considered for investigation at formal stage. *If you wish to amend your formal complaint* during processing with allegations "like related to" issues you raised in your informal complaint, *you must* request an amendment by letter to the Director, Civil Rights Center. |

**6, continued.** Use this space to continue #6 from the face of this form.

*Date(s)*    *Specific action(s)*

This Review is based on GS 12 standards not ours.

(2) 7/24/04 Req. for Accommondations = I submitted my request for Accommondations + working flex places + a new computer key board because for Flex Places I have PTSD + I have developed Carpel tunnel! Accomondation have not been granted where as females have been granted not only flex places + changing their work station Both were GS-12 females.

(3) 7/29/04 I WAS Issued a memorandum based on my learning Dissabilities as a Disabled Vet, which denied me promotion + using the IDP plan as a negative feed back which Sarah used to issue the memorandum on 7/29/04

---

**Definitions**

**race**    Racial group. For example:

| American Indian or Alaska Native | A person having origins in any of the original peoples of North, South, or Central America, and who maintains tribal affiliation or community attachment. |
|---|---|
| Asian | A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam. |
| black or African American | A person having origins in any of the black racial groups of Africa. |
| Native Hawaiian or other Pacific Islander | A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands. |
| white | A person having origins in any of the original peoples of Europe, the Middle East, or North Africa. |

**color**    One's skin color or complexion, for example, light-skinned or -complexion, dark-skinned or -complexion.

**national origin**    An individual's (or his or her ancestor's) place of origin; or having the physical, cultural, or linguistic characteristics of a national origin group. For example: Egyptian, Iroquois Nation, Hispanic. (Hispanic, Latino, or Spanish origin refers to persons of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race.)

**religion**    One's religious practice or belief. Examples: Baptist, Buddhist, Catholic, Hindu, Jewish, Moslem.

**age**    40 and above

**disability**    A physical or mental impairment which substantially limits one of more of a person's major life activities.

**sex**    Male or female.

**reprisal**    Reprisal for filing an EEO complaint, participating in the EEO process, or opposing a discriminatory employment practice.

## Gaytan, Richard O - ESA

**From:**   Adams, Cynthia L - ESA

**Sent:**   Monday, January 26, 2004 2:21 PM

**To:**   Martin, Georgia L - ESA

**Cc:**   Gaytan, Richard O - ESA; Young, Alice V - ESA; Itelson, Roselynn - OASAM; Barbara Brandt (AFGE)

**Subject:** RE: Grievance

Hi Georgia,

Yes, we can meet regarding Richard's accommodation requests. However, its important that Alice, as Acting DD, be present as well, since it is "she" who has the authority to make any changes regarding Richard's accommodation.   This afternoon is fine, just buzz me when you are ready.

Thanks,
*Cindi Adams*
*NCFLL 2391 Representative*


-----Original Message-----
**From:** Martin, Georgia L - ESA
**Sent:** Monday, January 26, 2004 1:27 PM
**To:** Adams, Cynthia L - ESA
**Cc:** Gaytan, Richard O - ESA; Young, Alice V - ESA; Itelson, Roselynn - OASAM
**Subject:** RE: Grievance

Thanks Cindi for further clarification on the Step 1 Grievance. One other matter though,   in Richard's last EEO charge, he stated that I had not met with him regarding his accommodation request per Bill's e-mail of 11/10/03. In Bill's e-mail, Bill states that Richard and I should meet to "get an idea of what it is he needs in the way of accommodation." I believe Richard's request for accommodation has been the same throughout. However, per Bill's e-mail I do need to meet with him to get it down once more.  Richard is out of the office through Thursday.  Can we do it today?  Thx.


-----Original Message-----
**From:** Adams, Cynthia L - ESA
**Sent:** Wednesday, January 21, 2004 3:15 PM
**To:** Martin, Georgia L - ESA
**Cc:** Barbara Brandt (AFGE); Gaytan, Richard O - ESA; Young, Alice V - ESA; Humble, Kathi - BLS; Itelson, Roselynn - OASAM
**Subject:** Grievance

Hi Georgia,

Last week you requested that when Richard returned from his onsite with George you wanted to meet regarding his grievance. You said you "*wanted more clarification on the issues.*"

As you are aware, Richard also filed an EEO Complaint which includes the same issues in the grievance. According to the NCFLL contract, Article 15, Section 2, E, states..."*In the event that an EEO complaint and a grievance are both filed concerning the same set of facts or on the same issue(s), the filing of an EEO complaint shall have the effect of terminating the grievance.*" It also states that the grievance can be resurrected in the event the Department dismisses the EEO complaint. You also mentioned that Doug Betten said the above only applied to EEO complaints that are filed formally.  Richard's EEO complaint was formally filed on December 27, 2003, therefore, your request to meet is not necessary as the EEO complaint takes priority over the

02/05/2004

## Gaytan, Richard O - ESA

**From:**  Adams, Cynthia L - ESA

**Sent:**  Friday, March 19, 2004 11:59 AM

**To:**  Young, Alice V - ESA

**Cc:**  Martin, Georgia L - ESA; Gaytan, Richard O - ESA; AFGE Bennie Bridges (Bridgesbr@aol.com); Rocha, Alberto - ESA

**Subject:** FW: Meeting 1/30/04

Hi Alice,

What is the status of us meeting regarding Richard's accommodation? I have been requesting a meeting since January 2004 with the latest request below which was 2/10/04, over a month ago. Richard has been requesting an accommodation since April 2003. Please let me know when we can meet.

Thank you,
*Cindi Adams*
*NCFLL 2391 Representative*


-----Original Message-----
**From:** Adams, Cynthia L - ESA
**Sent:** Tuesday, February 10, 2004 11:42 AM
**To:** Young, Alice V - ESA
**Subject:** RE: Meeting 1/30/04

Hi Alice,

We still need to meet regarding Richard's accommodation request. Its really not necessary to have Georgia present since it is you who can authorize his authorization request. As I stated below, Richard's accommodation request has not been adhered to and he requested accommodation in April 2003, which is nearly one year ago. Its important that we meet asap. Please let me know when you are available.

Thanks,
*Cindi Adams*
*NCFLL 2391 Representative*

> -----Original Message-----
> **From:** Adams, Cynthia L - ESA
> **Sent:** Friday, January 30, 2004 8:34 AM
> **To:** Young, Alice V - ESA
> **Cc:** Gaytan, Richard O - ESA; Martin, Georgia L - ESA; Barbara Brandt (Brandt.Barbara@dol.gov); Barbara Brandt (AFGE); Smitherman, William D - ESA; Humble, Kathi - BLS; Mosqueda, Norma - SOL
> **Subject:** RE: Meeting 1/30/04
>
> Hi Alice,
>
> It's imperative that you be a part of this meeting. Meetings with Georgia in the past have not been successful in that Richard's accommodation requests have not been adhered to. Please set up another date and time that you are *certain* to be available. We can meet any time you choose.
>
> Thank you,
> *Cindi Adams*
> *NCFLL 2391 Representative*

03/29/2004



## Gaytan, Richard O - ESA

**From:**    Young, Alice V - ESA
**Sent:**    Thursday, June 10, 2004 3:39 PM
**To:**    Gaytan, Richard O - ESA
**Cc:**    Nelson, Sarah - ESA
**Subject:** David Brondos vs UAL NORI

in Red

Welcome back Richard –
I reviewed the NORI and I have provided some constructive feedback. Acting DD Nelson will go over these comments with you.

07/30/2004

## Gaytan, Richard O - ESA

**From:**    Gaytan, Richard O - ESA

**Sent:**    Monday, June 14, 2004 8:30 AM

**To:**    Young, Alice V - ESA

**Cc:**    Smitherman, William D - ESA

**Subject:** FW: Re: Status on Promotion and Reasonable Accomodation

As you are aware you giving me the same answer as before, you know I demonstrated to you the work I have done and completed before you. At the mid-review you gave me a good report no Negative FEEDBACK!! Now it sounds that you are re-tracking your statement. I am requesting a list of the cases I closed and you signed off. While you were here in Oakland starting in Oct. of 2003, all the cases!!!
-----Original Message-----
**From:** Young, Alice V - ESA
**Sent:** Thursday, June 10, 2004 11:10 AM
**To:** Gaytan, Richard O - ESA
**Cc:** Smitherman, William D - ESA; Nelson, Sarah - ESA
**Subject:** RE: Re: Status on Promotion and Reasonable Accomodation

Richard – This is in response to your e-mails dated 6/2/04 and 6/3/04, regarding "status on my promotion". As you are aware, time in grade does not automatically mean that an employee is promoted. An employee must demonstrate that he/she can perform at the next higher level. This consist of: a) conducting compliance reviews and complaint investigations, b) identifying systemic discrimination where it exists in contractor's organization, c) develops and presents evidence of systemic discrimination meeting standards of proof, d) defines the class members and e) calculate monetary loss.

Also, an employee shall have skill in organizing data, writing clear, comprehensive and timely reports from complex voluminous documents obtained during audits. Lastly, the employee independently plans and carries out compliance reviews determining the approach to take, issues to review and questions to ask, with minimum supervision. Once this has been shown through completion of work assignments, you may be recommended for promotion to the next higher grade.

        -----Original Message-----
        **From:** Gaytan, Richard O - ESA
        **Sent:** Thursday, June 03, 2004 8:51 AM
        **To:** Young, Alice V - ESA
        **Cc:** Smitherman, William D - ESA
        **Subject:** Re: Status on Promotion and Reasonable Accomodation

        Good-Morning Alice;

        I just read my e-mail from Bill Smitherman, indicating that you will be leaving us. As you know Mr. Smitherman directed me to go you ask about the status of my promotion. I personally feel that I am getting a raw deal here. Since you have been here I have closed four cases and have proven I can do compliance audit work at GS-11 level. As you know, my promotion to GS-11 has been delayed for 30 months. Is it necessary to put me through another emotional rollercoaster ride to prove to a new District Director that I can do the work? It would be another slap for me! I now know I am being discriminated, on my promotion and my reasonable accommodation as a disable veteran.


        Thank you for giving me the opportunity to show you that I am proud to be a Mexican-American Hispanic Disabled Veteran,
        who served his country when called upon and fought with those regardless of race, creed and religion to keep this country
        free from those who wanted to take away their freedom!

Thank you for giving me the opportunity to show you that I am proud to be a Mexican-American Hispanic Disabled Veteran,
who served his country when called upon and fought with those regardless of race, creed and religion to keep this country
free from those who wanted to take away their freedom!

June 16, 2004
Richard O. Gaytan
Compliance Officer

Sarah Nelson
Acting District Director

Dear Sarah;

I was hired as a veteran with 30% or more service connected disability.
I have been diagnose as having Post Traumatic Stress Disorder hereafter PTSD, which
has been increased to 70% since working for OFCCP.

I am requesting accommodations under Section 503 of the Rehabilitation Act of 1973.
I have Post Traumatic Stress Disorder which affects my every day life activities as to
mood disturbance, sleep disturbance nightmares, poor concentration/memory, low
energy/motivation/interest level.

I am in a stressful management environment; such as not being given the opportunity to
work or ask questions or get training from co-workers in Module 2 or from the previous
Acting District Director as promised so that I can get promoted to the next level.

To help me relieve this stressful feeling, I am again requesting that I be reassigned to
Module 1 as a form of accommodation.

To understand PTSD, I am including a booklet that explains PTSD, which is a service of
the Office of Disability Employment Policy of the U.S. Department of Labor.

One of the suggestions is allowing an employee to work from home part-time, which we
know as flexi-place, to relieve PSTD.

Also I have Low Blood sugar so I have to have small frequent meals in order to avoid this
from happening.

Sincerely,

Richard O. Gaytan

Attach: 1) 2 Letters from Rukhsana A. Khan, M.D., VA Dated April 24,
              and May 27, 2003
         2) Letter from Connie Teresi, MD., VA
         3) Job Accommodations Network Booklet

To: Sarah Nelson, A.D.D                                    June 24, 2004
From: Richard Gaytan, CO

Re: 8 Hours Work Day

Good morning Sarah;

This is regards to the staff meeting on June 23, 2004 on getting permission to work over 8
hours. This is to inform you that I cannot perform an 8 hour work day due to my
disability. I don't know if you have read the information booklet on PTSD, that I have
provided you with my request for reasonable accommodation. Some days I work only the
require core hours.  I am requesting a blanket to work Flexi-place at home as form of
accommodation on days were I have low energy/motivation/interest level and poor
concentration due to my disability.

Thank you,



DEPARTMENT OF VETERANS AFFAIRS
Palo Alto Health Care System
3801 Miranda Avenue
Palo Alto CA 94304

In Reply Refer To:

July 27, 2004

To Whom It May Concern:

Mr. Richard Gaytan is a patient in my General Medicine Clinic at the Livermore VA. He had contacted clinic a few weeks ago reporting that his blood pressure was noted to be elevated at a health screening at his work. He reported a value of 160/98.

He had not had a history of elevated blood pressure to that extent in the past and therefore was advised to come for another blood pressure assessment at our clinic. He came that week and his blood pressure in clinic was noted to be 136/80 and hence much closer to normal. At yesterday's clinic visit, after a discussion regarding the stressors at his work place his blood pressure on my recheck rose 10 points above the initial value of 140/79.

As such, there is concern that his work environment is leading to increased stress and elevations in blood pressure, which over time will be detrimental to his long term health.

Please take this into consideration regarding when making decisions regarding his working environment.

Sincerely,

Connie Teresi

Connie Teresi, M.D.

## *LEZLY D. CROWELL*
### *Law Offices Of Lezly D. Crowell*
### *1271 Washington Ave. #804*
### *San Leandro, Ca. 94577*

*Phone: (510) 483-8044*

August 1, 2004

Sarah Nelson (Acting District Director)
Employment Standards Admin.
Office of Federal Contract
Compliance Programs
Oakland District Office
1301 Clay Street, Suite 1080 N
Oakland, Ca. 94612

        Re: Mr. Richard Gaytan
        Compliance Officer

Dear Ms. Nelson:

    As you should be aware of, I have been retained by Mr. Gaytan to handle his EEOC matters against your agency.

    I have received your memorandum dated July 29, 2004, directed to my client, Mr. Gaytan, and I must say I am very disturbed by your lack of action, your reactions and complete utter disregard to the very core of your departments existence, to investigate acts of discrimination, harassment, violations of the law just to name a few. The following regulations you are held to know of, investigate, and follow, but you have chosen to violate these very same acts:

    Under Section 503 of the Rehabilitation Act of 1973, as amended, employers with federal contractor or subcontractor of more than $10,000, must provide equal job opportunity and affirmative action for qualified individuals with disabilities. Disability conditions cover a wide range of metal and physical impairments.  Accommodations have been requested under this act by Mr. Gaytan, and denied in violation of said Act.

Veterans are protected by 38 USC 4212, of the Vietnam-era Veteran's Readjustment Act of 1974, as amended. The law requires that employers with federal contracts or subcontracts of $25,000 or more provide equal opportunity and affirmative action for Vietnam era, special disable, recently separated, and other protected veterans.

Under 5 U.S.C. sec. 2301(d)(12), by taking and failing to take personal actions (ie: promotion) without considering performance evaluations, is a violation of federal regulations that requires agencies to give "due weight" to employees' performance evaluations when determining which candidates are "best qualified" for promotion. This regulation implements or directly concerns two merit systems principles which provide that advancement in the government should be determined solely on the bases of ability, knowledge, and skills, and on demonstrated performance.

First I would like to inform you that your vicious, hostile attacks against Mr. Gaytan, regarding consultation with ADD Rocha, is unfounded, inappropriate, not to mention very unprofessional. He may have been simply seeking prior approval, making sure he had complied with all the instructions you had given him. This not insubordination on his part, but continued fear of chastising by you and his previous superior. You did not even afford him the consideration of asking him why or what his reasons were for going to ADD Rocha with the case. You simply jumped to conclusions. This not acceptable behavior. Your reaction to this incident just straightens our arguments that nothing in your department has changed with the departure of Ms. Martin, regarding abuse of authority, hostile work environment, retaliation, and discrimination. Additionally, your demand that he not speak to ADD Rocha, is in effect alienating him from others he is most comfortable with and in turn is just another example of the Departments failure to accommodate Mr. Gaytan, in view of his disability.

As you should be aware of Mr. Gaytan is a veteran serving his country from 10/2/69 to 4/7/80 as such he became disabled with a diagnoses of suffering from PTSD, with a 30% disability. From serving his country, he went to work for the U.S. Department of the Navy, as a civilian employee, where he spent 15 years, exiting with, still a 30% disability. While employed by the Navy Mr. Gaytan was classified as a WGS-10, which is equivalent to his present classification of a GS-9. He acquired several skills in handling discrimination cases, and eventually obtained certification as a paralegal. Since Mr. Gaytan's employment, at the Dept. of Labor, his disability has increased to 70 percent as of 4/25/03, and his blood pressure has increased considerably.

Next, there is nothing in Mr. Gaytan's performance evaluations which is remotely connected to any deficiencies, let alone a deficiency in his writing abilities. It was only after several EEOC complaints against Ms. Martin were filed, that she attacked Mr. Gaytan's writing ability. I see your comments on this matter as a vicious and violent attack against my client in retaliation for filing EEO complaints against members and former members of your Dept. Your attacks on Mr. Gaytan are proving, what we have been saying all along, that the discrimination and retaliation have not stopped but have escalated. It appears you have taken on the cause in maintaining a hostile environment in your section, against Mr. Gaytan, as demonstrated in your memorandum dated July 29, 2004. Additionally, your comments regarding Mr. Gaytan's writing ability that he "failed to meet the GS-9 requirements," can and will be taken as an admission that

you have failed in your duty to train Mr. Gaytan, as he has consistently complained of in his EEOC complaints, or that this is a last ditch effort to deny Mr. Gaytan a promotion to GS-11 and GS-12.

In my discussions with Washington, D.C. I have discovered that there has been a mass exiting from Module 2 to Module 1, therefore, I view your denial of adequate accommodations, not only sex discrimination, but you are deliberately making an example of Mr. Gaytan. Furthermore, I find the last sentence, in your 7/29/04 memo. to Mr. Gaytan, to be a deliberate ploy to set him up to fail, given the fact that he did not get the memo., until after the deadline you had set. Not only are you in violation of the above aforementioned acts, regulations, and laws, you are also in violation of The Whistleblower Protection Act of 1989 (WPA), as stated at 5 U.S.C. sec. 2302(b)(8).

In view of the above I am requesting reasonable accommodations and promotion as follows:

1.    Either transfer to Module 1 or Flex work at home; and

2.    Brief time off with pay (not to be deducted from any time off he has accumulated);

Respectfully,

Lezly D. Crowell

cc. Woody Gilliland

DEPARTMENT OF HEALTH & HUMAN SERVICES   Program Support Center

1

Federal Occupational Health Service
4550 Montgomery Avenue, Suite 950
Bethesda, Maryland 20814

August 16, 2004

Ms Annabelle T. Lockhart
Director, Directorate of Civil Rights
Office of the Assistant Secretary for Administration and Management
U.S. Department of Labor
200 Constitution Avenue, NW
Washington, D.C. 20210

Dear Ms. Lockhart:

As requested, I have reviewed the medical documentation provided by Mr. Richard Gaytan, a Department of Labor employee requesting workplace accommodations.  The documentation consists of:

- A letter dated April 24, 2003 from Dr. Rukhsana Khan
- A letter dated May 27, 2003 from Dr. Khan
- A progress note dated March 17, 2004 from Dr. Khan

In addition, I discussed the case directly with Dr. Khan

In response to the questions in your letter of July 22, 2003:

- From a medical standpoint, it is not conclusive that the accommodations requested, specifically a transfer to Module 1 and working part-time from home, would improve Mr. Gaytan's work performance.  I will elaborate on this when I answer Ms. Dorrell's questions.
- Additional medical information is not needed at this time.
- Once again, it is not clear that Mr. Gaytan is able to perform the essential functions of his current position.  This would best be determined by viewing Mr. Gaytan's work record over the whole period he has been in this position.  As far as Dr. Khan knows, Mr. Gaytan's current work difficulties date from a time when he was denied raise in his GS level.  If it is the experience of the Department of Labor that he was working competently before this occurred, it would indicate that he is able to competently perform his required work.  If not, his ability to function at the required level would be called into question.
- Many of the accommodations suggested by the Job Accommodation Network could be tried.  Once again, I will elaborate when I respond to Ms. Dorrell's questions.
- Evaluation of this request by a psychiatrist might be useful if this case continues to be contentious.
- An additional medical examination is not necessary at this point.

In response to the questions in Ms. Kate Dorrell's memorandum of July 19, 2004:

F·11.213

2

- Mr. Gaytan is currently complaining of irritability and a depressed mood. In view of the long length of his symptoms, his condition is likely to be chronic and stable.
- Mr. Gaytan does not appear to be distressed by the nature of the work or its quantity or complexity. He believes that he is capable of doing his required work. His issue appears to be, at least in his perception, unfair treatment from his current and previous supervisors. He believes that he should have been promoted and is unhappy that this did not occur.
- According to Dr. Khan, Mr. Gaytan is not happy with his current supervisor, even though she is new since June.
- According to Dr. Khan, the issue related to transferring him to a different work module is that Mr. Gaytan is demographically similar to the supervisor of that module so that he feels that he and this supervisor could relate better than during his previous employee-supervisor experiences. The type of work does not appear to be an issue.
- Working flexiplace may or may not help Mr. Gaytan's ability to perform the essential functions of his position. If there is a greater lack of distraction in his home environment, this might be a positive factor in improving his work product. However, his lack of easy accessibility to mentoring from his supervisor and fellow employees and his lack of easy accessibility from the office when he is needed would be negative factors. It is impossible to tell from clinical data alone whether this arrangement would be helpful.
- Many of the accommodations mentioned in the Job Accommodations Network website might be helpful. These include all of the items in the Memory section, although in other PTSD and mental health impairment cases processed through FOH, taping meetings has been seen as a possible hostile or intimidating action and has usually not been allowed. The items in the Lack of Concentration and Time Management/Performing or Completing Tasks sections would also likely be helpful. The Interacting with Co-workers section lists accommodations that may be problematical in some work settings. The Dealing with Emotions section deals as much with therapeutic options as accommodations. Allowing frequent breaks may be helpful but could prevent the employee from performing the essential functions of his position in a timely fashion. I am not aware that Mr. Gaytan needs any specific accommodations for Sleep Disturbance. The accommodations under Coping with Stress would decrease stress levels but could also make Mr. Gaytan unable to complete his work in an acceptable length of time. The suggestions in the Working Effectively with a Supervisor section should all be useful here. I have no indication that the last six sections; Muscle Tension or Fatigue, Absenteeism, Panic Attacks, Diarrhea/Vomiting/Nausea, Headaches, and Transportation Issues; are major concerns in this request

Please contact me if you need any further medical opinion on this case.

Sincerely,

Neal L. Presant, M.D., M.P.H.
Occupational Medicine Consultant

F-11,343

U.S. Department of Labor

Employment Standards Administration
Office of Federal Contract
Compliance Programs
Oakland District Office
1301 Clay Street, Suite 1080 N
Oakland, CA 94612



August 26, 2004

MEMORANDUM FOR:     Richard Gaytan
                    Compliance Officer

FROM:               *Sarah Nelson*
                    Sarah Nelson
                    Acting District Director

SUBJECT:            Reasonable Accommodation

In answer to your request for accommodation, I have arranged the following:

1. Request:  Mouse tray to attach to your computer keyboard.
   Action:  Provided mouse tray on August 11, 2004.

2. Request: Ergonomic keyboard.
   Action:  Provided one ergonomic keyboard on August 12, 2004.

At present, any other requests made by you are being considered. You will be notified
for such request.



**DEPARTMENT OF VETERANS AFFAIRS**
Palo Alto Health Care System
3801 Miranda Avenue
Palo Alto CA 94304

In Reply Refer To:

September 1, 2004

To whom it may concern

Re:  Richard O. Gaytan
SS#: 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

This is to inform that Mr. R. Gaytan is receiving care at the Mental Health Clinic of Livermore Division of Palo Alto veterans Affairs Health Care System. He carries a diagnosis of Post Traumatic Stress Disorder secondary to exposure to combat.

He reports feeling overwhelmed with the stress at his employment, which could be contributing to the symptoms of primary psychiatric condition. He is requesting to be off normal work routine for 45 days as he feels he cannot perform well at this time.

If you have any questions please write to the above address.

Thank you.

Sincerely,

Rukhsana A. Khan, M.D.
Staff Psychiatrist

## Adams, Cynthia L - ESA

**From:**   Gheno, Anita - OASAM
**Sent:**   Friday, September 10, 2004 1:05 PM
**To:**   Adams, Cynthia L - ESA
**Subject:** RE: Workplace Violence

Sorry, Cindi, it is not considered a safety issue at this time.

-----Original Message-----
**From:** Adams, Cynthia L - ESA
**Sent:** Thursday, September 09, 2004 2:23 PM
**To:** Gheno, Anita - OASAM
**Subject:** RE: Workplace Violence

What about the rest of my questions?

Thanks
Cindi

-----Original Message-----
**From:** Gheno, Anita - OASAM
**Sent:** Thursday, September 09, 2004 9:50 AM
**To:** Adams, Cynthia L - ESA
**Subject:** RE: Workplace Violence

It is my understanding that OFCCP managers and Roz Itelson met.  Thanks.

-----Original Message-----
**From:** Adams, Cynthia L - ESA
**Sent:** Thursday, September 09, 2004 9:43 AM
**To:** Gheno, Anita - OASAM
**Subject:** RE: Workplace Violence

Yes, my questions I asked you in the previous email.  When you say that *management* has met on this what do you mean?

Thanks,
Cindi

-----Original Message-----
**From:** Gheno, Anita - OASAM
**Sent:** Thursday, September 09, 2004 9:36 AM
**To:** Adams, Cynthia L - ESA
**Subject:** RE: Workplace Violence

Cindi, I understand that management has met on this.  Do you still have a concern?  If so, what is your specific concern?

Thanks, Cindi for clarifying.

-----Original Message-----
**From:** Adams, Cynthia L - ESA
**Sent:** Wednesday, September 08, 2004 1:24 PM

09/13/2004

**To:** Gheno, Anita - OASAM
**Subject:** RE: Workplace Violence

This is a Safety & Health issue that could jeopardize other employees, why do you feel that you should not be involved? Also, if you are not the person we should go to then who should we go to? Also, who is Teresa..is she a safety and health person, too?

Thanks,
Cindi

-----Original Message-----
**From:** Gheno, Anita - OASAM
**Sent:** Wednesday, September 08, 2004 12:33 PM
**To:** Adams, Cynthia L - ESA
**Cc:** Gheno, Anita - OASAM
**Subject:** RE: Workplace Violence

I did sit down with Teresa, Cindi. She and I were in agreement that I should not be involved. But, I feel good that I did discuss it with her and with your permission.

Would it be proper for you to call Teresa?

-----Original Message-----
**From:** Adams, Cynthia L - ESA
**Sent:** Wednesday, September 08, 2004 12:20 PM
**To:** Gheno, Anita - OASAM
**Subject:** Workplace Violence

Hi Anita,

Did you get a chance to meet with Teresa? Do you have any information to offer me? We will be meeting on this subject today in the Step 1 phase of the grievance. Please let me know.

Thanks,
Cindi

-----Original Message-----
**From:** Adams, Cynthia L - ESA
**Sent:** Tuesday, September 07, 2004 9:38 AM
**To:** Gheno, Anita - OASAM
**Subject:** RE: Workplace Violence

Yes, absolutely any help you can offer is appreciated.

Thanks,
Cindi

-----Original Message-----
**From:** Gheno, Anita - OASAM
**Sent:** Tuesday, September 07, 2004 8:29 AM
**To:** Adams, Cynthia L – ESA
**Subject:** RE: Workplace Violence

Cindi, would you like me to meet with Teresa on this? Perhaps a meeting between the major parties? It's worth a try.

I could at least talk to Teresa. But, I don't want to unless you o.k. me to.

-----Original Message-----
**From:** Adams, Cynthia L - ESA
**Sent:** Friday, September 03, 2004 6:14 PM
**To:** Gheno, Anita - OASAM
**Subject:** Workplace Violence

Hi Anita,

There was a very disturbing incident that happened last Thursday, August 26, 2004, between the Acting District Director and an employee.

I was called upon by the employee to represent him at a meeting with the Acting District Director, Sarah Nelson. During the meeting, the employee was informing me of how the Acting DD accused him of allowing someone else to write his investigative report for him. As the employee continued on, the Acting DD rudely interrupted him saying "wait a minute." The employee told the Acting DD, "I'm still talking....I'm not finished talking yet." But the Acting DD lurched halfway out of her chair toward the employee and pointing her finger at him she said "I'm going to write you up for being out of control." This was very disturbing because the employee has PTSD (post traumatic stress disorder) caused by being in Vietnam. Although we have filed a grievance against the Acting DD I am concerned that this district director will continue to harass this employee. She has been giving him a flurry of memos and meeting with him regarding his work.

This employee has had to take time off work because his stress level and blood pressure has gone up considerably. My main concern is that she will aggravate his already worsened condition to the point that he may "flip out." I believe that the actions of this Acting DD toward this employee are not only endangering him but the rest of the staff. As you know, the grievance process as well as the EEO process is very slow. What other actions can be immediately done to ensure the safety of all employees? Thanks for any help you may give. Have a great weekend.

Cindi



DEPARTMENT OF VETERANS AFFAIRS
Medical Center
3801 Miranda Avenue
Palo Alto CA  94304

In Reply Refer To:

September 10, 2004

To Whom It May Concern:

My patient, Richard Gaytan, reports continued work stressors that have precipitated some of his PTSD (post traumatic stress disorder) symptoms and aggravated his blood pressure.  He was noted to have a fairly significant blood pressure elevation at a blood pressure check at work and an increase in his blood pressure in our clinic after we began a discussion regarding his work situation.

He would like this to be taken into consideration when configuring his work environment.

Sincerely,

Connie Teresi

Connie Teresi, M.D.

U.S. Department of Labor

Employment Standards Administration
Office of Federal Contract
Compliance Programs
Oakland District Office
1301 Clay Street, Suite 1080 N
Oakland, CA 94612



September 15, 2004

**BY FEDERAL EXPRESS**

Woody Gilliland
Regional Director
Pacific Region
71 Stevenson Street, Suite 1700
San Francisco, CA 94105

Dear Mr. Gilliland:

It is unfortunate that we find ourselves having to write this letter. We are, among others, senior compliance officers at the Oakland District Office (ODO), and have never been faced with the issues we are currently faced with and will address in this letter.

At the outset, we wish to inform you that we are extremely dedicated to the mission of the Office of Federal Contract Compliance Programs (OFCCP). We take great pride in the work we do here and we are all interested in the success of the agency because our work is so vital to the lives of so many. We are part of an office that has been successful this year in achieving its mission in that we have closed at least three (3) systemic discrimination supply and service cases.

This letter serves mainly to inform you of the urgent concerns that members of the ODO staff have regarding the hostile behavior and hostile actions of Sarah Nelson who was appointed Acting District Director on June 7, 2004. In some respects, we anticipate that this letter will not come as a surprise to you. At the Labor Management Relations (LMR) meeting in June, two (2) NCFLL Stewards informed you of the distressful situations that they had encountered with Ms. Nelson recent to that LMR meeting. Additionally, Ms. Nelson has an infamous reputation as an abusive manager throughout the Pacific Region and the country for that matter. We anticipated that Ms. Nelson was assigned to this office to target staff at the ODO for termination. We had hoped we were wrong.

On June 7, 2004, you and Deputy Regional Director (DRD) Bill Smitherman introduced Ms. Nelson at a staff meeting at which time you assured us that Ms. Nelson would focus on development and training within the office. Instead, her management style of intimidation and degradation has led to a sharp decline in morale, distraction from important work, an increase in complaints to the EEOC, the Office of the Inspector General and other agencies, and has negatively impacted Labor Management Relations. Although her tenure in Oakland has been short, she has failed to garner the trust and respect of this office due to the following actions:

- She insisted upon arbitrary, superfluous and inappropriate individual meetings to review performance standards.

- She broke an agreement with members of Module 1 to wait for their immediate supervisor, ADD Rocha, to return to the office for the aforementioned individual meetings to review performance standards.

- She lied to, intimidated and verbally strong-armed one compliance officer into meeting with her for the aforementioned individual meeting without ADD Rocha present.

- She attempted the same aforementioned tactic with another compliance officer who refused to meet with her.

- She has implemented an agenda of aggressive and rude behavior towards the staff.

- She intimidated at least compliance officer who requested to work flexiplace for two days by stating that she had a *policy* of approving flexiplace for only one day which is in violation of the contract. She has also denied other compliance officers' request for flexiplace without justification, and contrary to past practice at the ODO, she has denied without justification credit time as well.

- She promised training to compliance officers in Module 2, but used their IDP to harass and abuse them.

- She has written memoranda to employees for work and behavior matters that were questionable and ludicrous.

- She insulted and physically intimidated two compliance officers by throwing papers in their faces.

- She insulted and physically intimidated another compliance officer by lunging at him.

Finally, Ms. Nelson published false and defamatory statements about compliance officers concerning the quality of their work, their productivity and other matters. Her statements contained provable false factual assertions and factual inaccuracies that go beyond mere statements of her opinion. She also included in her assessments reference to work that took place prior to her appointment. What is so deeply troubling is that she published these false statements to others in a document that is riddled with blatant defamatory misrepresentations which reflected a reckless, hurried and desperate attempt to attack and libel the ODO staff. Those whose reputations were attacked were compliance officers who had previously been highly rated, involved in the closure of systemic discrimination cases and had received cash awards from you acknowledging their superior contribution to the Pacific Region. As a manager for the OFCCP, Ms. Nelson has an obligation to be legally responsible in her actions toward Department of Labor employees. Ms. Nelson has clearly shown her malicious intent through the fabrication of these false statements

and her failure to investigate thoroughly her false assertions. Indeed, Ms. Nelson is on the road to producing a pattern of defamation and intimidation towards the ODO staff which is turning this office into a fragmented, non-functioning part of the Pacific Region. Further, Ms. Nelson's actions have the undesirable effect of undermining the reputation of this Agency and exposing it to increased scrutiny and legal liability.

Ms. Nelson has used very poor judgment and her actions are unacceptable. Ms. Nelson needs to be held accountable for her actions and be removed from her Acting District Director assignment before or by the conclusion of her 120 day detail ending October 7, 2004. If she is given any further assignment as a manager here at the ODO, we will pursue all avenues against her and the OFCCP, including political and legal, to protect ourselves from the hostile and intimidating work environment she has produced.

Sincerely,

Members of the Oakland District Office Staff

cc:    Dorothy Stephens
       Regional Solicitor's Office
       71 Stevenson Street, Suite 1110
       San Francisco, California 94105

**U.S. Department of Labor**

Employment Standards Administration
Office of Federal Contract
Compliance Programs
Oakland District Office
1301 Clay Street, Suite 1080 N
Oakland, CA 94612

Sept. 16, 2004

MEMORANDUM TO:          Woody Gilliland
                        Regional Director

THROUGH:                Sarah Nelson
                        Assistant District Director
                        Oakland District Area Office

FROM:                   Richard O. Gaytan
                        Compliance Officer

SUBJECT:                Request for Accommodation

I am requesting an accommodation of Administrative Paid Leave for 45 days because of
my medical condition of Post Traumatic Stress Disorder (PTSD) and high blood pressure.
I have provided letters from my VA doctors, (Dr. Connie Teresi and Dr. Rukhsana A.
Khan.) (See attachment)

Thank you for anticipated swift action in this matter, I will be looking forward to hearing
from you soon.

Attachment: 1) Letter from Rukhsana A. Khan, M.D., VA dated May 27, 2003 and
            September 1, 2004.
            2) Letter from Connie Tersei, M.D., VA dated September 10, 2004.

Cc: Lezly D. Crowell

**U.S. Department of Labor**

Employment Standards Administration
Office of Federal Contract
Compliance Programs
Oakland District Office
1301 Clay Street, Suite 1080 N
Oakland, CA 94612



September 23, 2004

MEMORANDUM FOR:    Richard Gaytan
                   Compliance Officer

                   *Sarah Nelson*

FROM:              Sarah Nelson
                   Acting District Director

SUBJECT:           Request for Accommodation

This is in response to your June 16, 2004 workplace accommodation request under the Rehabilitation Act of 1973, as amended. Your request for accommodation was processed through the chain of command to the National Office, Washington, D.C. The two specific accommodations you requested were: (1) transferring from Module II to Module I to be under a different supervisor; and (2) working flexi-place, apparently to decrease perceived workplace stress. Upon receipt of your request for accommodation, the Agency (OFCCP) sought the assistance of Dr. Neal Presant, an Occupational Medicine Consultant with the Public Health Service. On August 16, 2004, following review of written medical documentation and discussion with your physician, Dr. Rukhsana Khan, Dr. Presant issued his report and a copy was forwarded to you.

After careful review of Dr. Presant's assessment, at this time, the Agency is denying your specific request for accommodations, transfer to another module and working flexi-place. Our decision is based on the following. First, there does not appear to be sufficient medical documentation or other information to demonstrate that your diagnosis of PTSD substantially limits a major life activity. Therefore, we cannot determine whether or not you are disabled as that term is defined under the Rehabilitation Act.

Second, nonetheless, our review of your work demonstrates that you do not have the required skills and knowledge for your position, and, thus are not qualified, a necessary requirement under the Rehabilitation Act.

Third, there does not appear to be any medical evidence supporting a causal connection between your diagnosis of PTSD and your inability or unwillingness to work with either your current or past supervisors. In addition, there is no information which would lead one to conclude that the accommodations requested would be effective in allowing you to perform the essential functions of your position. Further, your doctor's stated reason for

*F-2, 10 of 31*

seeking a transfer to a different supervisor, to one more demographically similar to you, is unrelated to your diagnosis of PTSD.

Finally, there is no medical evidence to support a permanent flexi-place arrangement. However, the Agency is willing to permit episodic flexi-place requests within certain parameters. Those parameters include a written request, an outline of the work you will perform while working out of the office, a timetable for completion of the work, and an accounting of your work time when working flexi-place.

In addition, as suggested by Dr. Presant, the Agency will consider and implement those modifications/assistance outlined in the Job Accommodation Network website in the Memory, Lack of Concentration, Time Management/Performing, Completing Tasks and Working Effectively with a Supervisor sections. The Agency seeks your input as to which modifications/assistance in these sections (or other sections) you believe would be helpful..

If you have questions regarding this letter, please see me.

F-2,11831

**U.S. Department of Labor**

Employment Standards Administration
Office of Federal Contract
Compliance Programs
71 Stevenson Street, Suite 1700
San Francisco, CA 94105

September 27, 2004

MEMORANDUM FOR:    Richard Gaytan
                   Equal Opportunity Specialist

FROM:              Woody Gilliland
                   Regional Director

SUBJECT:           Termination – Reemployed Annuitant

On December 2, 2001, you were hired, on a temporary appointment, as a reemployed annuitant to the position of Equal Opportunity Specialist (EOS), GS-0360-09, in the Office of Federal Contract Compliance (OFCCP), Oakland District Office. On March 2, 2002, you were converted to a career conditional appointment in the same position. As a reemployed annuitant, you serve at the will of the Agency, in accordance with 5 USC 3323(b)(1). The Agency is terminating you because of your inability to perform the work of a GS-9 EOS at an acceptable level and your failure to follow management instructions.

At the GS-9 level, an EOS, with supervision, identifies and resolves, in a timely manner, compliance cases with systemic discrimination issues. Also, the EOS at the GS-9 level is required to produce work that reflects quality in decisions made to resolve issues of discrimination in a case. You are required to communicate, both orally and in writing, in an acceptable manner.

Since your appointment, you have received extensive technical and remedial training on OFCCP rules, regulations, policies, and procedures required of an EOS. You also received close supervision during the conduct of compliance evaluations and complaint investigations from managers and senior compliance officers.

Despite the fact that you have received extensive training and guidance, and you were given the tools necessary to demonstrate acceptable performance, you are failing to meet three of your critical elements: Quality, Work Management, and Communication.

In addition to your performance deficiencies, you have not followed management's instructions. For consistency in supervision and remedial training, you have been directed to go to your immediate supervisor with questions about your work. Despite these instructions, you repeatedly went to another supervisor or compliance officer for direction and assistance. Although we recognize that discussions with co-workers can

assist in training and learning, in your case, at your level, you misapplied the assistance given by others or, in some instances, it appears that the others, in a misguided attempt to assist you, performed your work for you. Also, your immediate supervisor instructed you, in writing, to submit all work on a specific case to her for review and approval before processing it, including the draft interview questionnaire. However, you submitted a completed interview statement of the complainant. Your supervisor found the interview statement to be seriously incomplete. In this case, not only was your work unacceptable; you also failed to follow management's instructions.

You have demonstrated an inability to perform your duties at an acceptable level, as well as unwillingness and/or inability to follow guidance. Consequently, this serves as a notification that you are being terminated from your position of Equal Opportunity Specialist, GS-0360-09, OFCCP, Oakland District Office and the Federal service effective **October 1, 2004.**

Because you are a reemployed annuitant, you may want to consult with Ann Lindsay, Retirement Counselor, regarding the effect this will have on your annuity. You may contact her at 415-975-4044.

Upon receipt of this termination notice, you should gather your personal belongings, return any government property you may possess to management, and leave the office immediately. You will be placed in a nonduty with pay status through October 1, 2004. If you have any further questions regarding this matter, please contact Roz Itelson, Regional Labor Relations Officer, at (415) 975-4061.

cc: Roz Itelson, Regional Labor Relations Officer

2

**LEZLY D. CROWELL**
*Law Offices Of Lezly D. Crowell*
*1271 Washington Ave. #804*
*San Leandro, Ca. 94577*
*Phone: (510) 483-8044*

October 12, 2004

Mr. Vic Sung
71 Stevenson Street, Suite 500
San Francisco, Ca. 94105

RE: Memo's. Dated, Aug. 13, 2004, Aug. 26, 2004 to Mr. Richard Gaytan from Sarah Nelson designated Written Feedback and Work Management, and resulting Termination Notice.

Dear Mr. Gilliland:

Both of the above Memo's by ADD Nelson are falsely designated. Neither document contains constructive feedback, rather they are viewed as a deliberate direct attack on Mr. Gaytan's charter, ability to do the work assigned, and used to belittle him in front of his co-workers. Webster Dictionary defines "Constructive Criticism as follows:

Main Entry: **con··struc··tive**

Pronunciation: k&n-'str&k-tiv

Function: *adjective*
**1** : declared such by judicial construction or interpretation *<constructive* fraud>
**2** : of or relating to construction or creation
**3** : promoting improvement or development *<constructive* criticism>
- **con··struc··tive··ly** *adverb*
- **con··struc··tive··ness** noun

Main Entry: crit··i··cism

Pronunciation: 'kri-t&-"si-z&m

Function: *noun*
**1 a** : the act of criticizing usually unfavorably

**b** : a critical observation or remark

**c** : **CRITIQUE**

**2** : the art of evaluating or analyzing works of art or literature
**3** : the scientific investigation of literary documents (as the Bible) in regard to such matters as origin, text, composition, or history

What Ms. Nelson did in both of these memo's. Was deliberately destructive, stated to provoke Mr. Gaytan into an unfavorable response in retaliation for past EEOC activity and turning her in as being aggressive, out of control, to the point of lashing out at Mr. Gaytan, physically assaulting him. Even though Mr. Gaytan rewrote the documents as instructed by Ms. Nelson, she was not pleased and accused him of insubordination, and misuse of his time, in addition of accusing him of not doing his own work.

It has been well documented that Mr. Gaytan was hired on 12/2001 at which time it was made known, to his employer, that he has a 30 percent active duty disability in which he has a diagnosed as suffering from PTSD.  In the short time Ms. Nelson has been Mr. Gaytan's supervisor his PTSD has been aggravated and has recently been diagnosed as 100 % disabled.. In addition Ms. Nelson's actions have aggravated his Blood Pressure to a dangerously high level, and well as causes significant problems with his Diabetics. Ms. Nelson has even accused Mr. Gaytan of not doing his own work.

Both Memo's of AUG. 13TH AND 26TH are full of lies, and misrepresentations, bu ADD Nelson regarding Mr. Gaytan's ability to complete work at not only the GS-9, Step 10 level but also at the GS-11 and GS12 level, as exhibited by the enclosed documents of accomplishments and accommodations.  He has proved that he can work independently and produce more than adequate documents/evidence to accomplish goals set by the Department, had he been provided with a less stressful and hostile work environment.

Mr. Gaytan  has been requesting reasonable accommodations under the Rehab. Act of 1973/ 503, and as entitled to under the Dept's. own guidelines in order to work in a work environment that is less stressful, not full of hostilities as it is working under ADD Nelson. Constant denial of his right to adequate accommodations is viewed as a continuing reprisal on your part through ADD Nelson, under "WPA".

The bases of the Termination are false and in retaliation for his past and present EEOC activity, deliberately propelled by the hallucinations of a mentally unstable person (ADD Nelson), with Mr. Gilliland's blessing.  This is not the first time ADD Nelson has acted irrationally, evidence validates that she has a habit of acting irrationally of which Woody Gilliland had full knowledge of and refused to do anything about.  ADD Nelson is a loose cannon ready to erupt, and in fact she did just that when she physically attacked Mr. Gaytan in front of his Union Rep.

Respectfully,

Lezly D. Crowell

Lezly D. Crowell
attachments include a list of damages requested
cc: Mr. Gaytan, Cindi Adams



# NOTICE TO
# ALL EMPLOYEES

### POSTED PURSUANT TO A SETTLEMENT AGREEMENT
### APPROVED BY A REGIONAL DIRECTOR OF THE
### FEDERAL LABOR RELATIONS AUTHORITY

WE WILL NOT discriminate or retaliate against Francisca Moralez or any other employee in the unit represented by American Federation of Government Employees, Local 2391, AFL-CIO by issuing counselings or by any other means because of the employee's activities as a union steward or any other protected activity within the meaning of the Federal Service Labor-Management Relations Statute.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce our employees in the exercise of their rights assured by the Federal Service Labor-Management Relations Statute.

WE WILL rescind the counselings issued Francisca Moralez and expunge any and all references thereto in all records maintained by the Agency.

U.S. Department of Labor
Employment Standards Administration
Office of Federal Contract Compliance Programs
Oakland District Office
Oakland, California

Dated _____

By _____    _____ Regional Director
    (Signature)                        (Title)

---

THIS IS AN OFFICIAL NOTICE
THIS NOTICE MUST REMAIN POSTED FOR 60 CONSECUTIVE DAYS FROM THE DATE OF POSTING

*Sample Question Only*

ADA Checklist A: Determining Whether Individual Has a Disability

**Definition of Disability: A physical or mental *impairment* that *substantially limits* a *major life activity*. An individual with a disability also includes someone who has a "record" of such a condition, and someone who is "regarded" as having such a condition.**

- **Does individual claim s/he has a current disability?**
  **Yes ___ No ___**

  Does s/he have an impairment? Yes ___ No ___

  If yes, what is the impairment? _____

  Discuss evidence of the impairment.

  Is a major life activity affected by the impairment? Yes ___ No ___

  If yes, what is the major life activity?
  Walking ___
  Speaking ___
  Breathing ___
  Hearing ___
  Seeing ___
  Thinking ___
  Sitting ___
  Standing ___
  Reaching ___
  Interacting with Others ___
  Learning ___

VII-2

Performing Manual Tasks (including household chores, bathing,

    brushing teeth) ___

Caring for Oneself ___

Concentrating ___

Lifting ___

Sleeping ___

Working ___

Reproduction ___

Sexual Functions ___

Eating ___

Controlling Bowels ___

Reading ___

Running ___

Other ___ (Describe)

Does the impairment *substantially limit* the major life activity?

Yes ___ No ___

Discuss what the individual cannot do, as well as what the individual is able to do.
Compare the individual's abilities/limitations to those of the average person.
NOTE: *If* the individual takes medications, uses prosthetic devices, or has learned behavioral
modifications to compensate for the impairment, discuss the individual's condition as medicated
or otherwise controlled.

If the major life activity is "working," identify the class of jobs or broad range of
jobs that the individual cannot perform because of the impairment. Also, identify
the jobs that are still available to the individual.

How long is condition expected to last?

•    Does individual claim s/he has a "record of" a disability? Yes ___ No ___